# Morgan Lewis

**Terry D. Johnson**
Partner
+1.609.919.6689
terry.johnson@morganlewis.com

November 15, 2016

**VIA ECF AND FEDEX**

Hon. Steven C. Mannion, U.S.M.J.
United States District Court
District of New Jersey
Martin Luther King Building & U.S. Courthouse
50 Walnut Street Room 4015
Newark, NJ 07101

Re:     Maria Galarza v. Rozlyn Whittle-Kinard, et al.,
        Civil Action No. 2:16-cv-00764-ES-MAH

Dear Judge Mannion:

We represent Defendant Prime Healthcare Services – St. Michael's, LLC ("Prime Healthcare"), and pursuant to Your Honor's Judicial Preferences, write to seek leave to file a motion to stay discovery pending resolution of Prime Healthcare's motion to dismiss Plaintiff's First Amended Complaint ("FAC") for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6) (Dkt. 23) ("Motion to Dismiss").  We have conferred with counsel for defendants Roslyn Whittle-Kinard, Lota Herrera, Dennis Sparks, David Ricci, and Dennis Pettigrew (the "Individual Defendants"), and they will not oppose a motion seeking a stay of discovery.

As set forth in greater detail below, all the relevant factors weigh in favor of staying these proceedings.  First, Plaintiff would suffer no prejudice if a stay were granted and, in fact, Plaintiff herself waited nearly 7 months before amending her complaint to add Prime Healthcare as a defendant.  Moreover, Prime Healthcare – which had no involvement whatsoever in the alleged conduct supporting Plaintiff's claims – is a defendant in this matter solely under a theory of successor liability, which theory is legally untenable here based on a prior bankruptcy court order that extinguished all potential claims against Prime Healthcare.  To require Prime Healthcare to engage in discovery when there is no legal or factual basis for liability on its part would create a clear hardship.

Third, Prime Healthcare's Motion to Dismiss all of Plaintiff's claims against it is based on clear bankruptcy law provisions and binding Third Circuit precedent, which Plaintiff cannot credibly challenge.  As a result, Prime Healthcare's imminent dismissal from this case unquestionably would

---

**Morgan, Lewis & Bockius LLP**

502 Carnegie Center
Princeton, NJ  08540-6241                    **☎** +1.609.919.6600
United States                                **F** +1.609.919.6701

A Pennsylvania Limited Liability Partnership | Randall B. Sunberg, Partner-in-Charge

Hon. Steven C. Mannion, U.S.M.J.
November 15, 2016
Page 2

simplify the issues in this case. Finally, because discovery in this matter is still in its infancy – no depositions have been taken – a stay would be appropriate at this juncture.

For these reasons, Prime Healthcare respectfully requests leave to file a motion to stay, pursuant to Federal Rule of Civil Procedure 26(c).

## I.    Factual and Procedural Background

On July 23, 2015, Plaintiff filed her initial complaint in New Jersey Superior Court, Essex County, asserting discrimination and harassment claims under the New Jersey Law Against Discrimination ("NJLAD") and the Family and Medical Leave Act ("FMLA") against her then-employer Saint Michael's Medical Center, Inc. ("St. Michael's").  (Dkt. 23-1, at 5.)  Plaintiff also brought wage claims against St. Michael's under the Fair Labor Standards Act ("FLSA") and the New Jersey Wage and Hour Law ("NJWHL").  (Id.)  Plaintiff served St. Michael's with the complaint on August 12, 2015.  That same day, St. Michael's in-house counsel advised the Essex County court and Plaintiff that St. Michael's had filed for Chapter 11 bankruptcy protection just two days earlier.  (Id.)  St. Michael's letter triggered an automatic stay of those proceedings, pursuant to 11 U.S.C. § 362.  On October 27, 2015, while Plaintiff's state court matter was still pending, St. Michael's terminated her employment.  (Id. at 6.)

On November 13, 2015, the United States Bankruptcy Court for the District of New Jersey (the "Bankruptcy Court") approved the sale of nearly all of St. Michael's assets to Prime Healthcare "free and clear" of all liabilities, including successor liability, pursuant to 11 U.S.C. § 363(f).  (Id. at 9.)  As the Bankruptcy Court recognized, the "free and clear" transfer of assets was "a fundamental and material condition to [Prime Healthcare's] purchase."  (Id. at 10.)

Undeterred, on December 14, 2015, Plaintiff commenced the instant matter, also in Essex County, against five then-current and former employees of St. Michael's, asserting claims virtually identical to those alleged against St. Michael's in Plaintiff's earlier Superior Court complaint, except that Plaintiff added claims arising from the termination of her employment.  (Id. at 11.)  Then, on July 1, 2016, Plaintiff sought leave to file an amended complaint adding Prime Healthcare as a defendant.  (Dkt. 10.)  The FAC was filed on August 22, 2016.  (Dkt. 12.)

On October 19, 2016, Prime Healthcare moved to dismiss all of Plaintiff's claims against it, pursuant to Federal Rule of Civil Procedure 12(b)(6).  (Dkt. 23.)  As established in Prime Healthcare's moving brief, Plaintiff's successor liability claims are barred as a matter of law – irrespective of any discovery that could conceivably be taken – by 11 U.S.C. § 363(f), which enabled the Bankruptcy Court to effectuate the transfer of St. Michael's assets to Prime Healthcare "free and clear" of liability, including any liability arising from Plaintiff's employment claims.  (Dkt. 23-1, at 14-22.)  Indeed, Prime Healthcare cited binding Third Circuit precedent that irrefutably supports the dismissal of Plaintiff's successor liability claims.  In re Trans World Airlines, Inc., 322 F.3d 282 (3d Cir. 2003) ("TWA") (holding that airline was immune from liability arising from employment claims because bankruptcy court's sale order transferred assets free and clear of liability pursuant to 11 U.S.C. § 363(f)).  Further, from a public policy perspective, the Third Circuit recognized that "[t]o allow [a plaintiff] to assert successor liability claims against [the free and clear purchaser of assets] while limiting other creditors' recourse to the proceeds of the asset sale would be inconsistent with the Bankruptcy Code's priority scheme."  Id. at 292-93.

Hon. Steven C. Mannion, U.S.M.J.
November 15, 2016
Page 3

Prime Healthcare also cited a 2014 opinion from Chief Judge Jerome B. Simandle, who dismissed a plaintiff's tort claims against a hotel owner who, like Prime Healthcare, acquired the subject property "free and clear" of liability under 11 U.S.C. § 363(f).  (Dkt. 23-1, at 18 (citing Molla v. Adamar of New Jersey, Inc., No. CIV.A. 11-6470-JBS, 2014 WL 2114848 (D.N.J. May 21, 2014)).) Significantly, in that case, Judge Simandle rejected the plaintiff's request for discovery, concluding that "***discovery will not impact the clear mandates of the bankruptcy court and § 363(f)***."  Molla, 2014 WL 2114848, at *5 (emphasis added).

On October 27, 2016, this Court entered a Scheduling Order requiring the continuation of fact discovery – which has been ongoing in Prime Healthcare's absence since June 2016 – through April 13, 2017.  (Dkt. 25.)  This includes a deadline for the propounding of written discovery on Prime Healthcare.  (Id.)  However, for the reasons set forth below, Prime Healthcare should be granted leave to file a motion to stay pending resolution of Prime Healthcare's Motion to Dismiss.

## II.   Prime Healthcare's Motion to Dismiss Warrants A Stay of Discovery.

This Court possesses "broad discretion and is entitled to great deference" in discovery matters, including in deciding whether to stay discovery for "good cause," pursuant to Federal Rule of Civil Procedure 26(c).  Actelion Pharm. Ltd. v. Apotex Inc., No. CIV. 12-5743 NLH/AMD, 2013 WL 5524078, at *2-3 (D.N.J. Sept. 6, 2013) (internal quotation marks omitted).  Although motions to stay proceedings generally are disfavored, the Court's inherent authority to grant such motions "'calls for the exercise of judgment, which must weigh competing interests' and 'balance' the hardships with respect to the movant and non-movant."  Id. at *3 (quoting Landis v. N. Am. Co., 299 U.S. 248, 254-55 (1936)).  As such, "courts generally weigh a number of factors in determining whether to grant a stay including: '(1) whether a stay would unduly prejudice or present a clear tactical disadvantage to the non-moving party'; (2) whether denial of the stay would create 'a clear case of hardship or inequity' for the moving party; (3) 'whether a stay would simplify the issues and the trial of the case'; and (4) 'whether discovery is complete and/or a trial date has been set.'"  Id. (internal citations omitted).  Those factors weigh heavily in favor of staying discovery in this case.

### A.   Granting a Stay Would Not Prejudice Plaintiff or Present a Tactical Advantage to Prime Healthcare.

Plaintiff would suffer no prejudice if these proceedings were stayed.  The motion date for Prime Healthcare's Motion to Dismiss is currently set for December 5, 2016.  (Dkt. 24.)  Although the Court may need additional time to issue its ruling, the "delay in resolving [a] dispositive motion does not, without more, establish that undue prejudice will result from issuance of a stay."  Id. at *4; see Akishev v. Kapustin, 23 F. Supp. 3d 440, 447 (D.N.J. 2014) ("Delay inherently results from the issuance of a stay, but 'mere' delay does not, without more, necessitate a finding of undue prejudice and clear tactical disadvantage.").

Moreover, any delay of these proceedings is a product of Plaintiff's own making.  She commenced her lawsuit against St. Michael's in July 2015, but did not name any of the Individual Defendants – all former St. Michael's employees who were clearly known to Plaintiff at the time her complaint was filed.  And although Plaintiff initiated this action in December 2015, she waited nearly seven months before naming Prime Healthcare as a defendant.  Thus, granting a stay now would cause a delay no greater than the one Plaintiff herself has already created.

Hon. Steven C. Mannion, U.S.M.J.
November 15, 2016
Page 4

Nor can Plaintiff claim that Prime Healthcare would obtain some tactical advantage from a stay. This is not a case where there is any alleged ongoing conduct that requires immediate redress, or where the alleged bad actors continue to profit from some ill-gotten business advantage.  To the contrary, Plaintiff's claims arise solely from her employment with St. Michael's, which terminated more than a year ago in October 2015.

Further, the only party attempting to gain a tactical advantage here through procedural gamesmanship is Plaintiff, who commenced this action merely to avoid the automatic stay instituted in her original lawsuit against St. Michael's, pursuant to 11 U.S.C. § 362.  See Kirtley v. Wadekar, No. CIV A 05-5383 JAG, 2007 WL 1963018, at *4 (D.N.J. July 2, 2007) (examining case where "plaintiff abandoned the first action, and appeared to have filed the second action in an attempt to avoid the stay in the bankruptcy action").  It is likely no coincidence that none of the defendants in this case were parties to Plaintiff's original lawsuit against St. Michael's, or that St. Michael's is not a party in this case.  Indeed, had Plaintiff named all necessary parties to her initial case – as required – the automatic stay likely would have applied to Prime Healthcare and the Individual Defendants, including St. Michael's former CEO, CFO, and CHRO, as well.[1]  See Costantino v. City of Atl. City, No. CIV. 13-6667 RBK/JS, 2015 WL 668161, at *2 (D.N.J. Feb. 17, 2015) (recognizing that automatic stays may be extended to non-debtor parties "where the debtor is the real party in interest such that a judgment against the third-party defendant will in effect be a judgment or finding against the debtor." (citing McCartney v. Integra Nat'l Bank N., 106 F.3d 506, 509-10 (3d Cir. 1997))).  That is particularly true because the vast majority of Plaintiff's claims against defendants arise from their employment with or, in the case of Prime Healthcare, alleged status as a successor of St. Michael's, and not from their alleged conduct as individuals.  Under such circumstances, an expansion of the automatic stay would be warranted because "the non-debtors' liability is derivative to their status within the debtor-corporation."  Stanford v. Foamex L.P., No. CIV. A. 07-4225, 2009 WL 1033607, at *2 (E.D. Pa. Apr. 15, 2009).

Thus, Plaintiff cannot credibly contend that she would be prejudiced by a stay of discovery, given that had she not attempted to game the system by filing this lawsuit in the first instance, her claims likely would have been subject to the automatic stay imposed in the action against St. Michael's.

### B.  Denial of a Stay Would Create a Clear Hardship for Prime Healthcare.

Prime Healthcare unquestionably faces hardship if a stay is denied.  Although the time and expense of discovery typically are insufficient to establish hardship, this is not the typical case. Prime Healthcare had absolutely no involvement in any of the alleged facts supporting Plaintiff's claims in this matter.  And it has been named as a defendant only because Plaintiff is attempting an end-run around the bankruptcy proceedings and now seeks to assert successor liability claims that were clearly extinguished by the Bankruptcy Court.  As Chief Judge Simandle recognized, no discovery is needed to support Prime Healthcare's defenses because the "mandates of the bankruptcy court and § 363(f)" are "clear."  Molla, 2014 WL 2114848, at *5.  Thus, to require Prime Healthcare to engage in months of discovery, including depositions, when there is no legal

---

[1]    Although Plaintiff's successor liability claims against Prime Healthcare did not arise until the Bankruptcy Court entered the sale order in November 2015, Plaintiff's case against St. Michael's was still open at that time.

Hon. Steven C. Mannion, U.S.M.J.
November 15, 2016
Page 5

or factual basis for its involvement in this case would be fundamentally unjust. This factor also
clearly weighs in favor of granting a stay.

### C. Prime Healthcare's Pending Motion to Dismiss <u>All</u> of the Claims Against it has a Strong Likelihood of Success.

In assessing the third factor, courts evaluate "whether the pending dispositive motion 'appear[s] to
have substantial grounds or, stated another way, do[es] not appear to be without foundation in
law.'" <u>Actelion</u>, 2013 WL 5524078, at *3 (citation omitted). Far from lacking legal foundation,
Prime Healthcare's Motion to Dismiss is supported by clear statutory authority and binding Third
Circuit precedent. As explained, the Bankruptcy Court's sale order transferred St. Michael's assets
to Prime Healthcare "free and clear" of liability, expressly including successor liability.

Since the Third Circuit's holding in <u>TWA</u>, 322 F.3d 282 (3d Cir. 2003), courts in New Jersey and
elsewhere have consistently dismissed successor liability claims based on a bankruptcy court's sale
order, pursuant to 11 U.S.C. § 363(f). See, e.g., <u>Molla</u>, 2014 WL 2114848 (dismissing tort claims
against Tropicana because "it bought the casino free and clear of all claims and interests arising
prior to the sale," pursuant to 11 U.S.C. § 363(f)); <u>Dinielli v. Tropicana Hotel & Casino</u>, No. A-
2869-12T4, 2014 WL 87671 (N.J. App. Div. Jan. 10, 2014) (affirming dismissal of negligence claims
after prior owner of the casino transferred its assets to defendant in a bankruptcy sale under 11
U.S.C. § 363(f)); <u>Douglas v. Stamco</u>, 363 F. App'x 100, 102-03 (2d Cir. 2010) (affirming dismissal
of products liability claims where successor liability theory was precluded by bankruptcy court's
sale order, pursuant to 11 U.S.C. § 363(f)); <u>see also</u> <u>In re Ormet Corp.</u>, No. 13-10334 (MFW), 2014
WL 3542133, at *1 (Bankr. D. Del. July 17, 2014) (rejecting pension trust's objection to sale order
and extinguishing claims related to underfunded pension plan against successor company because
"the Third Circuit in TWA held that a sale under section 363 can be free and clear of successor
liability").

Despite the clear weight of authority supporting Prime Healthcare's Motion to Dismiss, Plaintiff's
counsel has argued in correspondence to defense counsel that the motion is somehow legally
deficient. But none of counsel's arguments are even remotely convincing.

Counsel first contends that claims arising after a debtor has filed for bankruptcy "cannot be waived
under § 363." Counsel has offered no Third Circuit case law supporting that position – because
there is none. To the contrary, Chief Judge Simandle dismissed post-petition tort claims in <u>Molla</u>.
2014 WL 2114848, at *5 (D.N.J. May 21, 2014) ("The bankruptcy court's November 4, 2009 order,
11 U.S.C. § 363(f), and the TWA case are clear: Tropicana Corp.'s purchase of the hotel and casino
was free and clear of all claims, interests, and encumbrances including those claims, such as
Plaintiffs', ___*which arose after Adamar filed for bankruptcy*___.") (emphasis added).[2] Moreover,

---

[2]      See also <u>In re NE Opco, Inc.</u>, 513 B.R. 871, 877 (Bankr. D. Del. 2014) ("[Defendant] may
have committed a wrongdoing after the Court approved and entered the Sale Order [and thus
post-petition] but prior to the sale Closing, [but] the Sale Order and the injunction contained
therein bars [plaintiff] from asserting pre-Closing [disability discrimination] claims against
[defendant] . . . ."); <u>Dinielli</u>, 2014 WL 87671, at *2 (dismissing negligence claim because

Hon. Steven C. Mannion, U.S.M.J.
November 15, 2016
Page 6

the Bankruptcy Court's sale order clearly released Prime Healthcare from all liability, expressly including "successor liability," "whether arising prior to, on, or subsequent to August 10, 2015 (the 'Petition Date').["3] (Dkt. 23-3, at 11-12 of 32.)

Counsel further argues that Prime Healthcare's Motion to Dismiss lacks merit because it did "not include any evidence [that] Plaintiff was put on notice of the asset purchase prior to its conclusion." This argument is frivolous. The FAC alleges that St. Michael's notified Plaintiff that it "filed for Chapter 11 bankruptcy" on August 12, 2015 – months before the completion of the sale. (Dkt. 12 ¶ 74a.) Moreover, counsel neglects to mention that Plaintiff actually was notified of the sale itself via First Class Mail sent on August 26, 2015, as is readily apparent from the publicly filed Affidavit of Service entered in St. Michael's bankruptcy proceeding. See In re Saint Michael's Medical Center, Inc., et al., No. 15-249999 (VFP) (Bkr. D.N.J.), Dkt. Entry No. 132, at 44 of 88.

Finally, counsel contends that the Motion to Dismiss is not dispositive of Plaintiff's claims against Prime Healthcare because it can be held liable under a joint employer theory. Setting aside the fact that whether Prime Healthcare's Motion is wholly dispositive is an entirely separate issue from whether it has legal foundation, Plaintiff does not allege any facts whatsoever supporting joint employer liability.[4] At best, the FAC avers only that Prime Healthcare is liable under the FMLA and LAD "because it was operating St. Michael's at the time some or all of the discrimination, harassment and retaliation." (Dkt. 12 ¶ 109i.) As Prime Healthcare established in its moving brief, even if those allegations were true, which they are not, the FMLA and LAD impose liability on employers, not facility operators. (Dkt. 23-1, at 13 n.5.) In any event, Plaintiff alleges that "at all relevant times" she was an "employee of [St. Michael's]."[5] (Dkt. 12, at 1.)

―――――――――――――――

defendant purchased hotel free and clear of all liability, including liability arising from a fall that occurred after the filing of bankruptcy proceedings but before the sale closed).

[3]      It is also important to note that, even if counsel were somehow correct in their interpretation of the law, only Plaintiff's retaliatory discharge claims would survive, as only those causes of action arose post-petition. In other words, roughly 4 of Plaintiff's 6 claims would still be dismissed. All of the alleged conduct giving rise to Plaintiff's harassment and wage claims purportedly occurred pre-petition, prior to the commencement of St. Michael's bankruptcy proceeding, and even by Plaintiff's own analysis, would unquestionably be covered by 11 U.S.C. 363(f).

[4]      Determining joint employer liability under the FMLA requires considering "whether the defendant has the ability to fire the employee, to control the employee's schedule, to determine the employee's compensation rate, and to maintain employment records." Carstetter v. Adams Cty. Transit Auth., No. CIV.A. 1:06-CV-1993, 2008 WL 2704596, at *9 (M.D. Pa. July 8, 2008). Likewise, under the LAD, courts evaluate joint employment based on "(1) employer control; (2) the worker's economic dependence on the work relationship; and (3) the degree to which there has been a functional integration of the employer's business with that of the person doing the work at issue." D'Annunzio v. Prudential Ins. Co. of Am., 192 N.J. 110, 122 (2007). Plaintiff does not come even remotely close to alleging facts supporting any of these factors.

[5]      Counsel also has challenged the viability of Prime Healthcare's Motion to Dismiss because it "relies on facts and documents outside of the pleadings." Aside from having nothing to do with the legal basis of the Motion, counsel's procedural argument falls flat because there was nothing improper about attaching the Bankruptcy Court order or the asset purchase agreement to Prime

Hon. Steven C. Mannion, U.S.M.J.
November 15, 2016
Page 7

Given the frivolity of counsel's arguments, Plaintiff cannot credibly contest that Prime Healthcare's Motion to Dismiss lacks the requisite legal foundation.  Thus, this factor, too, ways in favor of granting a stay.

> ### D.  The Fact that Discovery has Only Just Begun Weighs in Favor of Staying Discovery.

Discovery in this matter has only just begun.  No depositions have been taken, and while Plaintiff and the individual defendants have exchanged written discovery, neither interrogatories nor document requests have been propounded on Prime Healthcare.  As a result, the final factor supports a stay of discovery in this case.  See SMT Sols., Inc. v. ExpoEvent Supply LLC, No. 11-6225 ES CLW, 2012 WL 3526830, at *5 (D.N.J. Aug. 15, 2012) (granting stay and finding that factor four "favors grating a stay," where "[p]aper discovery has just begun, the parties have not yet taken any depositions, . . . no expert discovery has been undertaken, no dispositive motions have been filed, and no trial date has been set").

## III.   Conclusion

All of the above factors weigh in favor of staying discovery in this matter pending resolution of Prime Healthcare's Motion to Dismiss.  Thus, Prime Healthcare respectfully requests that the Court grant it leave to file a motion to stay, pursuant to Federal Rule of Civil Procedure 26(c).

Respectfully submitted,



s/ Terry D. Johnson
Terry D. Johnson

TDJ
c:   Kevin M. Costello, Esq. (via ECF)
     Drake P. Bearden, Jr., Esq. (via ECF)
     Heather Boshak, Esq. (via ECF
     Micah Craft, Esq. (via ECF)
     Jason Ranjo, Esq. (via ECF)

---

Healthcare's responsive pleading.  First, the FAC references the bankruptcy and the asset sale in an attempt to establish successor liability, and courts may examine documents "integral to . . . the complaint . . . without converting the motion to dismiss into one for summary judgment." Woloshin v. New Jersey Transit Bus Operations, No. CV 16-1982, 2016 WL 5660427, at *1 n.1 (D.N.J. Sept. 29, 2016).  Moreover, both documents appear on the Bankruptcy Court docket of which this Court can take judicial notice.  Clark v. Strober-Haddonfield Grp., Inc., No. 07-910, 2008 WL 2945972, at *2 (D.N.J. July 29, 2008) (recognizing that on a motion to dismiss, "[t]he Court . . . takes judicial notice of the record in Plaintiff's bankruptcy proceedings").